NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RUFO,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALPHA RECOVERY CORP., et al.,<br><br>                    Defendants. | Civil Action No. 2:15-cv-00865 (CLW)<br><br>**OPINION AND FINAL JUDGEMENT**<br>**AND ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Final Approval of the Class Settlement, attorneys' fees, and incentive award.  Pursuant to 28 USC § 636, the parties consented to the Court's jurisdiction.  For the reasons set forth below, the motion is granted.

I.      **Background**

Plaintiff initiated this action seeking relief for Plaintiff as well as for class members under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., in relation to Defendant's alleged practice of "exposing the financial account numbers associated with the debts through the window envelopes when sending written collection communications."  (Motion for Final Approval of Class Settlement ("Motion for Final Approval") (ECF No. 46), at 1).  The FDCPA prohibits the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram . . ."  15 U.S.C. § 1692f(8).  Plaintiff filed this action on February 4, 2015 and subsequently amended her complaint to bring class action claims against Defendant.  Bureaus Investment Group III, LLC, Bureaus, and The Bureaus, Inc. were all former defendants in this action.  Plaintiff entered a settlement agreement dismissing these defendants from the case.

The parties entered into a Settlement Agreement and sought certification of the class and preliminary approval of the class action settlement.  (ECF No. 46).  The Settlement Agreement provides for a total settlement fund of $5,976 and each member of the Settlement Class who did not opt out will automatically receive a check for $83.  (Settlement Agreement, at 3 (ECF No. 46-2, Exhibit A)).  Defendant will also pay Plaintiff $2,000 to resolve her individual FDCPA claim. Attorneys' Fees, costs of Class Counsel, and the cost of settlement administration will be paid by the Defendant, totaling $30,000.  (Settlement Agreement, at 8).  The parties consented to this Court's jurisdiction on November 9, 2015.  (ECF No. 39).  On January 21, 2016 the Court, *inter alia*, preliminarily certified the class for settlement purposes and preliminarily approved the class action settlement subject to the approval and determination of the Court as the fairness, reasonableness, and adequacy of the settlement.  (ECF No. 43).

On May 9, 2016, Plaintiff filed its unopposed Motion for Final Approval of the Class Settlement, attorneys' fees, and incentive award.  (ECF No. 46).  The Court held a fairness hearing on May 16, 2016 regarding the fairness, reasonableness, and adequacy of the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Counsel for both parties appeared at the fairness hearing.  In addition, Plaintiff contended that the requested attorneys' fees are fair and reasonable and that the Court should approve an incentive award.

II.     **Discussion**

   a.     **Class Certification**

"[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)) (internal quotations omitted); *In re Gen. Motors Corp. Pick-Up*

*Truck Fuel Tank Products Liab. Litig.* (GM Trucks), 55 F.3d 768, 778 (3d Cir. 1995).  Moreover, "[t]he factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence [, such that] to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23."  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257–58 (3d Cir. 2009) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)) (internal brackets omitted).  Thus, the parties must establish by a preponderance that:

> 1) the class is so numerous that joinder of all members is impracticable [numerosity]; 2) there are questions of law or fact common to the class [commonality]; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and 4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

The Court reiterates its prior finding (ECF No. 43) that this case meets the requirements for class certification, i.e., the parties have established numerosity, commonality, typicality, and adequacy of representation by a preponderance of the evidence.  First, the class is so numerous that joinder of all sixty-seven members is impracticable.  Next, there are questions of law and fact common to the class.  Specifically, whether it was legal for Defendant to send written collection notices, with the financial account numbers associated with the debts, exposed through window envelopes.  The claims of Plaintiff are typical of the claims resolved through the settlement due to the narrow nature of the claims presented, i.e., each class member was subjected to the same practice as Plaintiff.  Finally, Plaintiff is capable of fairly and adequately protecting the interests of the class in connection with the settlement.  As evidenced by the thorough and effective advocacy employed throughout this litigation as well as by the considerable experience of

Plaintiff's counsel, it is clear that Plaintiff enlisted competent counsel.  Similarly, Plaintiff's interests in this matter are sufficiently aligned with those of others class members given the essentially identical nature of the claims of Plaintiff and class members.

The Court is likewise satisfied that certification is appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, i.e., "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Pertinent to these findings are:

> A) the class members' interests in individually controlling the prosecution or defense of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by or against class members; C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

First, it is plain that questions of law and fact common to the class predominate over any questions affecting only individuals because, again, this case concerns the confined issues of the nature and legality of Defendant's debt collection notices to class members; these issues apply nearly uniformly to class members and would vary little by individual.  Moreover, the class members' interests in individual control is minimal on account of the modest amount of damages available in comparison to the cost of maintaining an individual suit.  *See, e.g., Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012) (discussing the insufficiency of five hundred dollars to compensate one for the time and effort of litigating a claim).  Next, the Court accepts the certification of Plaintiff's counsel that no class members have brought similar claims. Thus, the second and third factors under Rule 23(b) are resolved in favor of class certification in this Court because no other suit or forum is at issue.  And as to the prospect of difficulties in

managing a class action, the Court concludes that, despite the considerable numbers of claimants and potential claimants, there is no indication of difficulty in administration of the action. The attorneys of The Wolf Law Firm, LLC and the Kim Law Firm, LLC are experienced in monitoring and supervising class action settlements. (Kim Decl., ¶ 21, ECF No. 46-2). A class action therefore is the superior means for resolving this suit.

### b.    <u>Fairness of Settlement</u>

Having found that the parties established by a preponderance of the evidence that class certification is appropriate, the Court now considers the proposed settlement (ECF No. 46-2, Exhibit A). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GM Trucks*, 55 F.3d at 784-85. Before a class action can be settled, the settlement agreement must be approved; this entails a determination that the proposed settlement is fair, reasonable, and adequate, and that it is not the product of fraud or collusion. Fed. R. Civ. P. 23(e); *In re Prudential Insurance Company of America Sales Practice Litigation*, 148 F.3d 283, 316 (3rd Cir. 1998); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990). In addition, "in cases where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously[,]" a heightened standard applies "to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members." *Pet Food Products*, 629 F.3d at 350 (internal quotations and citations omitted). The decision whether or not to approve a proposed class action settlement rests in the Court's sound discretion. *Bryan v. Pittsburgh Plate Glass Co., et al.*, 494 F.2d 799, 801 (3d Cir. 1974).

The Court must examine the following factors to evaluate a proposed class action settlement: 1) the complexity and duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining a class action; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement in light of the best possible recovery; and 9) the range of reasonableness of the settlement in light of the attendant risks of litigation. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (indicating that a "district court must consider" the *Girsh* factors) (citing *Girsh v. Jepson*, 521 F.2d 153, 156-157 (3rd Cir. 1975)). An "additional inquir[y] for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." *Baby Products*, 708 F.3d at 174 (noting that other "prudential" and "permissive and non-exhaustive" factors are set forth in *Prudential*, 148 F.3d at 323). Importantly, "[t]he proponents of the settlement bear the burden of proving that these factors weigh in favor of approval." *GM Trucks*, 55 F.3d at 785-86 (citations omitted).

The Court first considers the related factors of complexity and duration of the litigation as well as the stage of the proceedings. This action has been vigorously litigated since its commencement in 2015. During that period, a considerable amount of time, money and effort has been expended by all parties. But for the instant settlement, this matter would continue to be thoroughly litigated from class certification, through pretrial preparations, and to trial. (Kim Decl., ¶¶ 25-39, ECF No. 46-2; Wolf Decl., ¶¶ 8-24, ECF No. 46-3). The savings of time and resources are thus considerable and the Court credits the opinions of experienced counsel as to settlement value as well as the strengths and weaknesses of their relative positions. These factors accordingly weigh strongly in favor of approval of the settlement.

To assess the reaction of the class to the settlement, the Court considers "whether members of the class support the settlement." *Ins. Brokerage*, 282 F.R.D. at 103 (citing *In re Lucent Techs., Inc., Sec. Litig.*, 307 F.Supp.2d 633, 643 (D.N.J. 2004)). Here, direct notice was provided to the class members through the settlement administrator and to date there have been no requests for exclusion. No objections were raised at the Fairness Hearing held on May 16, 2016. (Tr. at 4; *See* Kim Decl., ¶¶ 12-16, ECF No. 46-2; *See also* Kim Decl., Exhibit C (Affidavit Regarding Notice Administration), ECF No. 46-2).

The Court next considers the risks of establishing liability and damages. It would be expected that, as discussed above, defense counsel would diligently litigate these issues if the matter were to proceed in the absence of immediate settlement. Counsel for Defendant has indicated that the risks of liability were considered when reaching this Settlement Agreement. At the Fairness Hearing, Defense counsel made note of the case law in the Third Circuit ruling that an internal-identifying number, one that does not provide "any information as to the original account", can be a violation of the FDCPA. (Tr. at 7-6). This type of number was displayed on the envelopes in the instant case.

Next, in light of the fact that the Settlement Agreement is the product of extensive negotiations and is presented subsequent to protracted litigation, the Court accepts Plaintiff's representation that Defendant lacks the ability to withstand a greater judgment. Specifically, Defendant has agreed to pay slightly less than 1% of his net worth and in "a litigated FDCPA class action, statutory damages would be limited to 1% of the Defendant's net worth." (Kim Decl., ¶¶ 23, ECF No. 46-2). Liability is capped at the lesser of $500,000 or 1% of Defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B). Thus, this factor weighs in favor of approval of the settlement.

Finally, the Court considers the range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation. These "factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case [and these factors test for] reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (citing *Prudential*, 148 F.3d at 322). As discussed above, the Court recognizes the high level of advocacy displayed in this matter along with the uncertain prospects of ultimate success for either side. The Settlement Agreement is nearly 1% of the Defendant's net worth.[1] In light of the uncertainty and burden which inhere to continued litigation as well as the statutory limit on recovery, the Court finds that these concrete settlement amounts are reasonable. These factors accordingly weigh in favor of approval of the settlement.

In conclusion, the Court finds by a preponderance that the nine *Girsh* factors weigh in favor of approval. The settlement was reached subsequent to negotiations among experienced counsel in a thoroughly litigated case. Furthermore, class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. Therefore, the Court concludes that the settlement fund of $5,976 represents a fair, reasonable, and adequate result for the class considering the substantial risks and strains of further litigation as well as the immediate benefits provided by the settlement.[2]

---

[1] According to Defendant $5,976.00 is 0.996 of his net worth. *See* Motion for Final Approval, at 4, ECF No. 46-1.
[2] Although no presumption of fairness was necessary to reach this result, the Court nonetheless notes that such a presumption would apply to this matter because "1) the settlement negotiations occurred at arm's length; 2) there was sufficient discovery; 3) the proponents of the settlement are experienced in similar litigation; and" 4) no one in the class objected. *Warfarin*, 391 F.3d at 535 (citing *Cendant*, 264 F.3d at 232 n. 18).

**c.**    <u>Fairness of Attorneys' Fees</u>

The awarding of attorneys' fees in a class action settlement is within the Court's discretion, provided that the Court thoroughly analyzes and reviews an application for such fees. *In re Rite Aid*, 396 F.3d 294, 299 (3d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). This review is necessary even where the parties have consented to the proposed attorneys' fees because of the risk that the "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." *GM Trucks*, 55 F.3d at 820; *In re AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002).

To determine appropriate attorneys' fees, courts generally apply either the lodestar method or the percentage-of-recovery method. *Rite Aid*, 396 F.3d at 300. The lodestar method is usually applied in statutory fee shifting cases because it "reward[s] counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Id.* at 300 (citing *Prudential*, 148 F.3d at 333). The lodestar award of attorneys' fees is calculated by multiplying the number of hours worked on a case by a reasonable hourly billing rate for those services. *Id.* at 306.

Plaintiffs' counsel seeks $30,000 total for attorneys' fees, costs of Class Counsel, cost of settlement administration, and related expenses. This sum includes time already spent and time to be spent in the future finalizing the settlement. (ECF No. 46). Plaintiffs' counsel employed the lodestar method in calculating their fees and costs prior to the Fairness Hearing, totaling $14,141.78 for the Wolf Law Firm, LLC and $19,353.31 for the Kim Law Firm LLC. (Kim Decl., ¶¶ 35, ECF No. 46-2; Wolf Decl., ¶¶ 20, ECF No. 46-3). Thus the attorneys' fees and costs are in excess of $33,495.09, as these lodestar calculations do not even account for time spent preparing

for and attending the Fairness Hearing; preparing the settlement checks and communication with class members; overseeing implementation of the award; and responding to any inquiries from class members.  (Kim Decl., ¶¶ 37, ECF No. 46-2; Wolf Decl., ¶¶ 22, ECF No. 46-3).

Because the factors the Court considers in assessing the reasonableness of the proposed attorneys' fees overlap with those for considering class certification and settlement fairness, the Court incorporates the findings set forth above.  In particular, the following facts weigh heavily in favor of approving attorneys' fees: 1) the attorneys involved are of a high skill level and experienced in this type of litigation; 2) the attorneys committed hundreds of hours to this complex matter through its lengthy history; 3) the attorneys settled this case well before trial or further appeal and thus before the onset of substantial additional legal fees; and 4) none of the proposed class members objected to the attorneys' fees.  Plaintiff's thorough recitation of the applicable law and its accompanying collection of comparable cases bolster the Court's finding that the proposed fee is reasonable. (Motion for Final Approval, at 17 - 23, ECF No. 46-1).

### d.    Incentive Award

Plaintiff seeks an incentive award of $2,000. (Motion for Final Approval, at 23, ECF No. 46-1; Settlement Agreement, at 4, ECF No. 46-2, Exhibit A.) Incentive awards to a class representative may be appropriate for the following reasons:

> 1) just as with class counsel, the class representatives have conferred a benefit on all class members by their willingness to bring the litigation; 2) class representatives should be rewarded for taking action that is in the public interest; and 3) public policy favors compensation for class representatives for taking on risks of litigation on behalf of absent class members.

*Sullivan v. DB Investments, Inc.*, 2008 WL 8747721, at *37 (D.N.J. May 22, 2008).

Here, the Court is satisfied that the requested award is fair and reasonable because, as certified by Plaintiff's counsel and as is evident from the record, Plaintiff conferred a benefit to

the class and provided significant assistance in the case by participating in the drafting of the pleadings and the rest of the litigation process, including discovery and negotiation of the settlement.  Ms. Rufo has been working with counsel since February 2014 and she most likely delayed the resolution of her individual claim in an attempt to get relief for the entire class.  (Kim Decl., ¶ 24, ECF No. 46-2).  An award of $2,000 is reasonable to resolve her individual dispute and as recognition for her efforts on behalf of the class.

## III.    Conclusion

In light of the foregoing, the class is certified and the Settlement Agreement is approved as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ACCORDINGLY, IT IS** on this 24th day of June, 2016,

**ORDERED** that Plaintiff's Motion for Final Approval of the Class Settlement, attorneys' fees, and incentive award is **GRANTED**;

**FURTHER ORDERED** that this Order incorporates by reference the terms of the Settlement Agreement; and

**FURTHER ORDERED** that the Clerk shall terminate ECF No. 46.


*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**